WILLIAM W. PURVIS and wife *v.* WIL'IAM H. CARSTAPHAN.

Where a wife joins her husband in a conveyance of her separate property to secure a debt of the husband, the relation which she sustains to the transaction is that of surety.

A surety is entitled to the benefit of all the securities which the creditor acquires from the principal debtor, and if the creditor perverts or misapplies such securities to the prejudice of the surety. he thereby discharges the surety *pro tanto.* Therefore, where a feme covert joined her husband in a conveyance of her separate estate to secure the payment of advances which the defendant, a merchant, had agreed to make, to enable the husband to carry on a farm, and the mortgage also conveyed the crops to be made, and all the stock, tools, &c., to secure the sum of $1,500, and the husband received the $1,500, and the additional sum of $1,100, and the crops were delivered to the defendant, who sold them, and by the direction of the husband, without the knowledge of the wife, applied the proceeds of the crop to the payment of the additional sum of $1,100: *It was held,* That as against the husband the application was valid, but as against the wife, a surety, it was a perversion of the security, and operated as a discharge of the liability of the land.

MOTION to dissolve an *Injunction,* heard before *Moore J,* at Spring Term, 1875, MARTIN Superior Court.

The plaintiffs had executed to the defendant a mortgage, a copy of which is hereto annexed. The debts to be secured were those of the husband; the land mortgaged was the property of the wife.

The plaintiff William, traded with the defendant Carstaphan, to an amount greater than fifteen hundred dollars, and the other creditors secured in the mortgage had been paid in full; and delivered to the defendant Carstaphan, all of the cotton raised on the mortgaged lands, to an amount greater than the $1,500 and the $224.83, but the plaintiff is still indebted to him in about the sum of $1,100. The plaintiff William, directed Carstaphan to apply the proceeds of the sale to the amount called the $1,100 debt. The plaintiff William, and his wife lived upon the mortgaged premises, and he managed and controlled the entire crop.

There was no evidence that the plaintiff Martha, knew the extent of the purchases of her husband from the defendant or of the manner in which the proceeds from the sale of the cotton was to be directed to be applied.

The defendant Carstaphan, had advertised the lands mortgaged for sale, and the plaintiffs had obtained an order restraining the sale.

At the hearing, his Honor being of opinion that while the mortgage would only secure Carstaphan against a second mortgage only to the extent of the sums of $1,500, and $24.83 yet as against the plaintiffs, it was a security for whatever amount the plaintiff William, might owe the defendant, contracted for the purposes mentioned in the mortgage, although the land mortgaged was the property of the wife, and more than $1,500 had been advanced to the plaintiff William.

From this ruling of his Honor, the plaintiffs appealed.

The following is a copy of the mortgage :

State of North Carolina, }
County of Martin.            }

This indenture made and entered into this the twenty sec ond day of February, one thousand eight hundred and seventy-three, by and between William W. Purvis and wife, Martha E. Purvis, of the first part, of the above mentioned county and State, and William H. Carstaphan, of the State of North Carolina and county of Martin, and B. Weisenfield, Bernard Stern, J. Friedenwaller and David Weisenfield, trading under the name, firm and style of Wiesenfield, Stern & Co., of the city of Baltimore and State of Maryland, parties of the second part, witnesseth : That the said William W. Purvis and wife, Martha E. Purvis, for and in consideration of the sum of five dollars, to them in hand paid by the parties of the second part, and for the further considerations which will appear and be set forth hereafter in this deed, have bargained and sold, and by these presents do bargain, sell, alien and convey unto William H. Carstaphan, B. Weisenfield, Bernard Stern, J. Fried-

enwald and David Weisenfield, of said city of Baltimore, trading under the name, firm and style of Weisenfield, Stern & Co., the following real and personal property, lying and being in the State of North Carolina and county of Martin, and bounded, described and identified as follows, viz: A tract of land containing four hundred and eighty-four acres, adjoining the lands of McG. Taylor and that of the heirs of Joshua Taylor and others, it being the piece upon which William W. Purvis and his wife, Martha E. Purvis, now reside, four mules, two horses, one mare, all of the farming utensils to the said Purvis belonging, one gin and gin house, and all of the crops of every kind and description that may be planted or any where raised by the said William W. Purvis during the year eighteen hundred and seventy-three: To have and to hold the said four hundred and eighty-four acres of land, four mules, two horses, one mare, the farming utensils of every description, gin and gin house, and crops of every description raised by the said William W. Purvis during the year eighteen hundred and seventy-three, unto them, the said William H. Carstaphan and B. Weisenfield, Bernard Stern, J. Friedwald and David Weisenfield of the firm of Weisenfield, Stern & Co., their heirs and assigns forever, in fee simple and absolutely; and the said parties of the first part doth now and will forever warrant and defend unto the parties of the second part, the title herein granted to said disposed of property against the claims of any and all persons whatsoever.

Provided and nevertheless, that the conditions on which the above deed is made are as follows, viz: That it is the desire and intention of the said William W. Purvis to engage in farming during the year eighteen hundred and seventy-three on his plantation in said county, and which he is unable to do without aid in the way of money and supplies; which money and supplies the said William H. Carstaphan and B. Weisenfield, Bernard Stern, J. Friedwald and David Weisenfield, of the firm of Weisenfield, Stern & Co., agree to furnish, if necessary to the amount of three thousand dollars, in proportion

37

as follows, that is to say, William H. Carstaphan, supplies and money to the amount of fifteen hundred dollars, and Weisenfield, Stern & Co., money, or its equivalent, if desired, to the amount of fifteen hundred dollars to the said William W. Purvis to assist him in his farming operations.

Now, therefore, if the said William W. Purvis shall, on or before the first day of January, eighteen hundred and seventy-four, pay to the said Weisenfield, Stern & Co., either in cotton or money, whatever sum they may advance at eight per cent. interest on the same and five per cent. commissions on such sum and in all respects hold them harmless from any loss, and also pay William H. Carstaphan the sum of two hundred and twenty-four dollars and eighty-three cents, and whatever further sums he may advance either in money or goods, and likewise save him, the said William H. Carstaphan in everything harmless from any and all losses, then the above deed and every part thereof shall be void, otherwise it shall remain in full force and effect, and it shall be lawful for and the duty of the said William H. Carstaphan, and the members composing the firm of Weisenfield, Stern & Co., to advertise for the term of thirty days all the property herein conveyed (saving and excepting the crop) at five public places and expose the same at public sale for cash before the court house door in Williamston, and after having paid themselves any and all sums that may be due after the sums realized by the sale of the crop have been exhausted and the expenses attending the sale and this instrument, shall pay over to the said William W. Purvis, his heirs and assigns the balance remaining, and the said William H. Carstaphan or any member of the said firm of Weisenfield, Stern & Co., as it now exists shall have the power to sign and make title to the property thus disposed of. As witness their hands and seals the year and date above written. Interlineation, if any, before signing.

(Signed,)                              W. W. PURVIS,
                                       MARTHA E. PURVIS.

*Moore*, with whom was *Gilliam*, for the appellants, argued :

The debt being the husband's, and the land mortgaged to secure it being the wife's—the wife's estate is considered only as a surety. *Huntington* v. *Huntington*, L. Cases in Equity, p. 577, 3rd American Edition ; American notes by Hare and Wallace, pp. 591, 594 and the following cases there cited: *Hawley* v. *Bradford*, 9 Paige. 200 ; *Fitch* v. *Cotheal*, 2 Sanford, chap. 29 ; *Ayres* v. *Hustead*, 25 Conn. 504 ; *Johns* v. *Reardon*, 11 Maryland 465 ; *Sheidle* v. *Weishlee*, 4 Harris 134 ; *Knight* v. *Whitehead*, 20 Miss. 245.

This equity is not rebutted by a reservation of the right of redemption, or the surplus arising from a sale under mortgage to the husband ; same page, 592, top of 2nd column, and page 583, near bottom. *Week* v. *Haas*, 3 W. & S., 520, 523 ; *Duffy* v. *Insurance Co.*, 8 Id. 413.

Being invested with the character of surety, she is entitled to the equities of a surety and will be discharged by any act on the part of creditor of a nature to impair her recourse for indemnity. Same page, 592, 1st paragraph, 2nd column ; *Loomer* v. *Wheelwright*, 3 Sandford, chap. 135, and other cases there cited.

Mortgage not good beyond the amount specified, which here is $1,500 to Weisenfield, Stern & Co., $1,500 to Carstaphan, $1,500 which has been paid. Kent's Commentaries and cases there cited, *Pettilorne* v. *Griswold*, 4 Conn. 158 ; *Stroughton* v. *Rusco*, 5 Conn. 442 ; *St. Andrews Church* v. *Tomkins*, 7 Johns. Ch. Rep. 14.

See also *Marsh* v. *Lea*, L. C. in Eq., p. 610 and 611 ; *The Bank of Utica* v. *Finch*, 3 Barbour, Ch. Rep. 293.

Here the cotton mortgaged was delivered and was sufficient to pay the debt. The wife had a right to be indemnified from this cotton if her land were subjected to payment. The holding of the cotton and its proceeds discharges the surety, and it could not be applied to any other debt without discharging the surety except with her assent. *Pain* v. *Packard, King* v.

*Baldwin*, American Leading Cases, notes to page 345, 4th Edition.

The mortgage is only good for $3,000,—$1,500 to Carstaphan.

It is true bonds, deeds, &c., are taken most strongly against those making them, but this rule is not resorted to until other rules of construction fail, but when there is a condition, that is to be taken most favorable to the obligors or grantors. *Bennehan* v. *Webb, et. al.*, Ire. Vol. 6, p. 57; Greenleaf's Cruise on Real Property, Vol. 2, p. 694, 2d Edition, quoting Bac. Max. Reg. 3, p. 14; 2nd Kent's Commentaries, page 556 and 557, other authorities.

*Smith & Strong,* contra, argued :

1. The mortgage secures all the advances made and partly indemnifies defendant against loss in making them. The limitation is only of the defendant to make advances.

2. The mortgage, though valid as against subsequent mortgages only for the sum mentioned, is effectual as between parties as well in securing them in excess of the sum. Bat. Rev., chap. 65, sec. 19, p. 566.

3. The cotton received was rightfully applied in the payment of the advances in excess of the $1,500, and this by Purvis' express sanction. *Jenkins & Co.* v. *Beal,* 70 N. C. Rep., 440 ; 2 Spencer's Eq. Juris.

4. The surplus reserve, after discharging the costs, to the husband, confers on him the right to make the application, and makes him an agent of both.

5. The advances were for both, and used in making the cotton, and may be regarded as expenses going to be first paid, and the residue only subject to the provisions of the mortgage. Just as hands may be hired and paid out of the crop, so may other necessary expenses incurred thereby, since without this no crop could have been made to become available as payment of the secured debt.

6. The mortgagor making either debts to the mortgagee,

cannot redeem without paying both. 4 Kent Com., p. 175; 2 Story Eq. Juris., sec. 1,034, 35.

The wife cannot claim against creditor. Cool. Law of Mortgage, 485.

READE, J. Where a wife joins her husband in a conveyance of her separate property to secure a debt of the husband, the relation which she sustains to the transaction is that of surety.

A surety is entitled to the benefit of all the securities which the creditor acquires from the principal debtor. And if the creditor prevents or misapplies such securities, to the prejudice of the surety, he thereby discharges the surety, *pro tanto.*

It follows that if the defendant creditor acquired any security from the husband plaintiff, and perverted or misapplied it, either of his own will, or with the concurrence of the principal debtor, it releases the surety wife, *pro tanto.*

These positions are well supported by the authorities cited in the plaintiff's brief.

It is necessary now to enquire whether the creditor did misapply, to the prejudice of the surety, any security which he had from the principal debtor. And this depends upon the proper construction of the mortgage.

The mortgage recites that the plaintiff husband, desired to engage in farming; and, to enable him to do so, the defendant had agreed to furnish him with money and supplies to the amount of $1,500, if necessary. And the husband and wife mortgaged not only the crops to be made, but the stock, tools, machines, &c., and the farm itself, which farm was the property of the wife to secure whatever sum the defendant might advance, and to save him harmless, &c. The defendant advanced $1,500 and $1,100 more. And the question is, whether the mortgage covers the $1,100, as well as the $1,500. We think it does not. Although the words " whatever sum " and " save harmless," are large; yet we think they are restrained by the sum specified, $1,500. The stipulation was, that the

defendant was to furnish $1,500, "*if necessary.*" If so large a sum was not necessary, then "whatever sum" might be necessary, less than that.

It is admitted that the creditor received from the debtor husband more of the crop, &c., produced on the farm than was necessary to pay off the $1,500; but by the consent of the husband, he applied it to the excess over the $1,500. While this appropriation was good as against the husband, yet as against the surety wife, it was a perversion, and operated as a discharge of the liability of her land.

There was error in dissolving the injunction.

Let this be certified.

PER CURIAM.                    Judgment accordingly.